ROBERT N. BLACK, ESQ. (SBN 70178)
CITY ATTORNEY (*rblack@eurekaca.gov*)
GREGORY M. HOLTZ, ESQ. (SBN 293280)
DEPUTY CITY ATTORNEY (*gholtz@eurekaca.gov*)
City of Eureka
531 K Street
Eureka, CA 95501
Telephone: (707) 441-4147

Attorneys for City of Eureka

Not subject to filing fees pursuant to
Government Code Section 6103

# IN THE UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SANTA ROSA DIVISION

In Re:

ZEPHYR HOSPITALITY, LLC,
          Debtor.

Case No. 26-10132

Chapter 11

**DECLARATION OF MILES SLATTERY IN SUPPORT OF CITY OF EUREKA'S MOTION FOR RELIEF FROM STAY**

Case Filed:    March 5, 2026
Hearing Date:  May 5, 2026
Hearing Time: 9:30 a.m.
Place:   U.S. Courthouse
1300 Clay Street, Courtroom 220
Oakland CA 94612

 Hon. William H. Lafferty

I, Miles Slattery, declare as follows:

1. I make this declaration based on my own personal knowledge. I am over 18 and competent to attest to the matters herein stated if necessary.

2. I hold the position of City Manager for the City of Eureka (City). In that capacity, I manage the City's lease activities.

3. I have been overseeing the City's lease with Debtor Zephyr Hospitality LLC since 2020, and I am familiar with the file.

4. The City is the owner of the real property known as 900 New Navy Base Road, Samoa, CA 95564, Humboldt County APN 401-141-004 (Property). Exhibit A is a true and correct copy of the City's deed to the property. The Debtor has no ownership interest in the Property.

5. The Debtor's lease for the Property was terminated by the City effective December 1, 2025, for nonpayment of rent and other financial obligations. On December 2, 2025, the City filed an unlawful detainer action against the Debtor in Humboldt County Superior Court, Case No. CV2502596. On December 18, 2025, the City submitted its request for entry of default and judgment, with supporting documents. On December 23, 2025, the Debtor filed its first petition for bankruptcy. On December 24, 2025, the Superior Court entered default in the unlawful detainer matter, and on December 29, 2025, entered judgment. On January 6, 2026, the City received notice of Defendant's bankruptcy petition. The City took no further action to enforce its December 29, 2025, judgment.

6. On January 22, 2026, the City filed a motion to vacate entry of default and judgment in the unlawful detainer. In its papers, the City explained that, while the City had no knowledge of the filing bankruptcy petition at the time it requested entry of default and judgment, the Superior Court's actions nonetheless were in error for violating the stay provision. The Superior Court granted the City's motion and entered an Order directing entry of default and judgment, *nunc pro tunc*, for January 29, 2026, the day after this Court's Order of Dismissal in the Debtor's first bankruptcy petition. Nevertheless, the Superior Court entered default on February 23, 2026, and judgment on March 3, 2026. The Debtor did not file any paper nor appear at any hearing in the unlawful detainer case.

7. On March 6, 2026, the Debtor filed its second bankruptcy petition.

8. Also on March 6, 2026, the City submitted a writ of execution to the Superior Court to enforce that portion of the unlawful detainer judgment entitling the City to possession of

Case: 26-10132   Doc# 25   Filed: 03/23/26   Entered: 03/23/26 15:26:18   Page 2 of 27

the Property. At the time it submitted the writ of execution, the City had no knowledge of the Debtor's second bankruptcy petition.

9. On March 10, 2026, the Superior Court issued the writ of possession allowing the Sheriff or Marshall to restore possession of the Property to the City.

10. While the unlawful detainer judgment awarded the City back rent, including late fees and profit payments, in the amount of $45,288, this amount reflects only one year of rent owed to the City. In fact, the Debtor has not paid any money to the City since September 2024, and its debt to the City, as of March 5, 2026, is approximately $60,805. Attached as Exhibit B is a true and correct copy of the invoice for the account.

11. In the meantime, since the City obtained its first judgment against the Debtor on December 29, 2025, the Debtor has been actively soliciting the public to purchase gift cards and schedule events at the Property.

- Attached as Exhibit C is a true and correct copy of a post from the Instagram account humboldtbaysocialclub, which is the name of the business operated by the Debtor, that I accessed on or near January 7, 2026, advertising rooms for January, February, and March.

- Attached as Exhibit D is a true and correct copy of an advertisement for socialspas bookings at the Property dated January 20, 2026, that I accessed on or near January 20, 2026.

- Attached as Exhibit E is a true and correct copy of a post from the Instagram account humboldtbaysocialclub that I accessed on or near February 27, 2026, advertising pop-up sushi at the Property.

The City is concerned that these actions mislead the public because they show that the Debtor continues to receive income, engage with other small businesses, and accept reservations despite not engaging in reorganizing its debt through bankruptcy. Rather, the Debtor appears to be using its multiple bankruptcy filings to delay restoration of possession of the Property to the City and to defraud creditors.

Case: 26-10132   Doc# 25   Filed: 03/23/26   Entered: 03/23/26 15:26:18   Page 3 of 27

12. The City seeks annulment of the stay so that it may enforce the writ of execution issued by the Superior Court on March 10, 2026.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct. Executed at Eureka, California on March 23, 2026.

                         _____

Miles Slattery
City Manager
City of Eureka

# Exhibit A

Naval Auxiliary Airport & Seaplane Base
Eureka, California
N-Calif-98

QUITCLAIM DEED

THIS INDENTURE, made this __4th__ day of __December__ 1947, between the UNITED STATES OF AMERICA, acting by and through War Assets Administration, under and pursuant to Reorganization Plan One of 1947 (12 Fed. Reg. 4534) and the powers and authority contained in the provisions of the Surplus Property Act of 1944 (58 Stat. 765) and WAA Regulation No. 1, as amended, Grantor, and the CITY OF EUREKA, a political subdivision of the State of California, Grantee.

WITNESSETH: That the said Grantor, for and in consideration of the assumption by the Grantee of all the obligations and its taking subject to certain reservations, restrictions and conditions, and its covenant to abide by and agreement to certain other reservations, restrictions, and conditions, all as set out hereinafter, has remised, released, and forever quitclaimed, and by these presents does remise, release, and forever quitclaim to the City of Eureka, its successors and assigns, under and subject to the reservations, restrictions and conditions, exceptions, and rights hereinafter set out, all its rights, title, interest and claim in and to all that piece or parcel of land situate, lying and being in the County of Humboldt and State of California, to wit:

BEGINNING at the southwest corner of Lot 4 in Section 32, Township 5, North of Range 1, West, Humboldt Base & Meridian, according to the United States Government Survey thereof; thence running North on the section line common to Sections 31 and 32 in said Township to the section corner common to Sections 29, 30, 31, and 32 of said Township; thence continuing North on the section line common to Section 29 and Section 30 of said Township 5, to the low water mark of the Pacific Ocean; thence Northeasterly on the said low water mark of said Pacific Ocean to the point of intersection of a prolongation of the North boundary line of lot 2 in said Section 29; thence East along the north boundary line of said lot 2, to the point of intersection of said boundary line with the north and south half section line common to southwest quarter ($SW\frac{1}{4}$) and the southeast quarter ($SE\frac{1}{4}$) said Section 29, which point is the northeast corner of said lot 2 in said Section 29; thence running south on said north and south boundary line to the Northwest corner of

Case: 26-10132   Doc# 25   Filed: 03/23/26   Entered: 03/23/26 15:26:18   Page 6 of 27

Lot 5 in said Section 29; thence running south 55° east to the low water line of Humboldt Bay; thence southwesterly along said low water mark of Humboldt Bay; thence southwesterly along the low water mark of Humboldt Bay to the point of intersection of a prolongation of the southerly boundary line of Lot 4 in Section 32 in said Township 1, aforesaid; thence westerly along the quarter section boundary line common to Lots 4 and 5 in Section 32, aforesaid, to the point of beginning.

SAVING AND EXCEPTING from the above conveyance the following described pieces and parcels of land, to wit:

PARCEL ONE:

That parcel of land 50 feet wide granted to the United States of America by deed dated the 2nd day of September 1931, and recorded in Book 203 of Deeds at page 363, of the Official Records in the Office of the County Recorder of Humboldt County, California.

PARCEL TWO:

A parcel of land 40 feet wide along the south boundary line of Lot 4 in Section 32 aforesaid, as follows:

Beginning at the southwest corner of Lot 4 in Section 32, aforesaid; thence running North along the west boundary line of said Lot 4, a distance of 40 feet; thence running easterly on a line parallel to the south boundary line of said Lot 4 to the point of intersection of the northerly line of that 50 foot right-of-way across the southeasterly portion of said Lot 4, described in the deed granted to the United States of America dated the 2nd day of September 1931, and recorded in Book 203 of Deeds at page 363, of the Official Records in the office of the County Recorder of Humboldt County, California; thence southerly 33° 14' 47" along the northwesterly line of said 50 foot right-of-way to the southerly line of Lot 4 of said Section 32; thence West on the southerly line of said Lot 4 in said Section 32, to the point of beginning.

PARCEL THREE:

Beginning at a point 500 feet south, 33° 14' 47" West from the north boundary line of said Section 32, on the easterly line of that 50 foot piece of land described in the deed dated the 2nd day of September 1931, and recorded in Book 203 of Deeds at page 363 of the Official Records in the Office of the County Recorder of Humboldt County, California; thence continuing south 33° 14' 47" west along the easterly line of said 50 foot right-of-way a distance of 700 feet; thence south 30° east, a distance of 940 feet more or less to the low water mark of the west side of Humboldt Bay; thence northeasterly along the low water mark on the West side of Humboldt Bay to a point 300 feet Southwesterly from the section line common to Section 29 and Section 32, aforesaid, as measured along the said low water mark of Humboldt Bay; thence southwesterly 1340 feet, more or less, to the point of beginning.

-2-

Case: 26-10132    Doc# 25    Filed: 03/23/26    Entered: 03/23/26 15:26:18    Page 7 of 27

Said land conveyed hereby, being a part of the land acquired by condemnation proceedings had in the District Court of the United States in and for the Northern District of California, Northern Division, Case No. 4513, wherein United States of America was plaintiff, and 478.24 acres of land in Eureka, Humboldt County, California, Sadie M. Deakyne, et al., were defendants, and in which proceedings final judgment was entered therein on the 14th day of April 1944.

THE ABOVE DESCRIBED LAND, hereby transferred is conveyed together with appurtenant buildings, structures, and improvements, as follows:

### BUILDINGS AND IMPROVEMENTS

Administration Building No. 1,
Storage Building No. 7.
Pump House No: 6.
Fire Equipment Shelter.

### IMPROVEMENTS

Bituminous Landing Area, 2 mooring circles
Field Marking System
Drainage System
Fueling System
Electrical System
Water System
Sewage System

### OPERATING EQUIPMENT

All operating equipment used in the buildings above described.

The above described premises are transferred subject to existing easements for roads, highways, public utilities, railways, and pipelines.

EXCEPTING, HOWEVER, from this conveyance all right, title and interest in and to all property in the nature of equipment, furnishings and other personal property which can be removed from the land without material injury to the land or structures located thereon other than property of such nature located on the premises conveyed hereby which is required for the efficient operation for airport purposes of the structures and improvements specifically listed hereinabove as being transferred hereby; and further excepting from this conveyance all structures on the above described premises other than structures specifically described or enumerated above as being conveyed hereunder, and reserving to the Grantor the right of removal from the premises of the property and structures excepted hereby, within a reasonable

-3-

Case: 26-10132   Doc# 25   Filed: 03/23/26   Entered: 03/23/26 15:26:18   Page 8 of 27

period of time after the date hereof, which shall not be construed to mean any period less than one (1) year after the date of this instrument.

By accepting this instrument or any rights hereunder, the said Grantee hereby releases the Grantor from any and all liability for all claims for losses or damage arising out of the exceptions and the reservations above.

Said property transferred hereby was duly declared surplus and was assigned to the War Assets Administration for disposal, acting pursuant to the provisions of the above mentioned Act, as amended, Reorganization Plan One of 1947 (12 Fed. Reg. 4534) and applicable rules, regulations and orders.

By the acceptance of this deed or any rights hereunder, the said Grantee, for itself, its successors and assigns agrees that transfer of the property transferred by this instrument, is accepted subject to the following restrictions set forth in subparagraphs (1) and (2) of this paragraph, which shall run with the land, imposed pursuant to the authority of Article 4, Section 3, Clause 2 of the Constitution of the United States of America, the Surplus Property Act of 1944, as amended, Reorganization Plan One of 1947 (12 Fed. Reg. 4534) and applicable rules, regulations and orders:

(1) That all of the property transferred hereby, hereafter in this instrument called the "airport", shall be used for public airport purposes, and only for such purposes, on reasonable terms and without unjust discrimination and without grant or exercise of any exclusive right for use of the airport within the meaning of Section 303 of the Civil Aeronautics Act of 1938. As used herein, "public airport purposes" shall be deemed to exclude use of the structures conveyed hereby, or any portion thereof, for manufacturing or industrial purposes. However, until, in the opinion of Civil Aeronautics Administration or its successor Government agency, it is needed for public airport purposes, any particular structure transferred hereby may be utilized for non-manufacturing or non-industrial purposes in such manner as the Grantee deems advisable, provided that such use does not interfere with operation of the remainder of the airport as a public airport.

-4-

Case: 26-10132  Doc# 25  Filed: 03/23/26  Entered: 03/23/26 15:26:18  Page 9 of 27

(2) That the entire landing area, as defined in WAA Regulation 16, dated June 26, 1946, and all structures, improvements, facilities and equipment of the airport shall be maintained at all times in good and serviceable condition to assure its efficient operation, provided, however, that such maintenance shall be required as to structures, improvements, facilities and equipment only during the remainder of their estimated life, as determined by the Civil Aeronautics Administration or its successor Government agency. In the event materials are required to rehabilitate or repair certain of the aforementioned structures, improvements, facilities or equipment they may be procured by demolition of other structures, improvements, facilities or equipment transferred hereby and located on the above described premises, which have outlived their use as airport property in the opinion of the Civil Aeronautics Administration or its successor Government agency.

By the acceptance of this deed or any rights hereunder, the said party of the second part for itself, its successors and assigns, also assumes the obligations of, covenants to abide by and agrees to, and this transfer is made subject to, the following reservations and restrictions set forth in subparagraphs (1) to (6) of this paragraph, which shall run with the land, imposed pursuant to the authority of Article 4, Section 3, Clause 2 of the Constitution of the United States of America, the Surplus Property Act of 1944, as amended, Reorganization Plan One of 1947 (12 Fed. Reg. 4534) and applicable rules, regulations and orders:

(1) That insofar as is within its power and reasonably possible, the party of the second part and all subsequent transferees shall prevent any use of land either within or outside the boundaries of the airport, including the construction, erection, alteration, or growth of any structure or other object thereon, which use would be a hazard to the landing, taking-off, or maneuvering of aircraft at the airport, or otherwise limit its usefulness as an airport.

(2) That the building areas and non-aviation facilities, as such terms are defined in WAA Regulation 16, dated June 26, 1946, of or on the

-5-

Case: 26-10132   Doc# 25   Filed: 03/23/26   Entered: 03/23/26 15:26:18   Page 10 of 27

airport shall be used, altered, modified, or improved only in a manner which does not interfere with the efficient operation of the landing area and of the airport facilities, as defined in WAA Regulation 16, dated June 26, 1946.

(3) That itinerant aircraft owned by the United States of America (hereinafter sometimes referred to as the "Government") or operated by any of its employees or agents on Government business shall at all times have the right to use the airport in common with others; provided, however, that such use may be limited as may be determined at any time by the Civil Aeronautics Administration or the successor Government agency to be necessary to prevent interference with use by other authorized aircraft, so long as such limitation does not restrict Government use to less than twenty-five (25) per centum of capacity of the landing area of the airport. Government use of the airport by virtue of the provisions of this subparagraph shall be without charge of any nature other than payment for damage caused by such itinerant aircraft.

(4) That during the existence of any emergency declared by the President of the United States of America or the Congress thereof, the Government shall have the right without charge, except as indicated below, to the full, unrestricted possession, control and use of the landing area, building areas, and airport facilities, as such terms are defined in WAA Regulation 16, dated June 26, 1946, or any part thereof, including any additions or improvements thereto made subsequent to the declaration of any part of the airport as surplus; provided however, that the Government shall be responsible during the period of such use for the entire cost of maintaining all such areas, facilities and improvements, or the portions used, and shall pay a fair rental for the use of any installations or structures which have been added thereto without Federal aid.

(5) That no exclusive right for the use of any landing area or air navigation facilities, as such terms are defined in WAA Regulation 16, dated June 26, 1946, included in or on the airport shall be granted or exercised.

(6) That the property transferred hereby may be successively transferred only with the approval of the Civil Aeronautics Administration or

-6-

Case: 26-10132    Doc# 25    Filed: 03/23/26    Entered: 03/23/26 15:26:18    Page 11 of 27

the successor Government agency and with the proviso that any such subsequent transferee assumes all the obligations imposed upon the Grantee by the provisions of this instrument.

By the acceptance of this instrument or any rights hereunder, the Grantee further agrees with the Grantor as follows:

(1) That upon a breach of any of the aforesaid reservations or restrictions by the Grantee or any subsequent transferee, whether caused by the legal inability of said Grantee or subsequent transferee to perform any of the obligations herein set out, or otherwise, the title, right of possession and all other rights transferred to the Grantee, or any portion thereof, shall at the option of the Grantor revert to the Grantor upon demand made in writing by the War Assets Administration or its successor Government agency at least sixty (60) days prior to the date fixed for the revesting of such title, right of possession and other rights transferred, or any portion thereof; provided, that, as to installations or structures which have been added to the premises without Federal aid, the Government shall have the option to acquire title to or use of the same at the then fair market value of the rights therein to be acquired by the Government.

(2) That if the construction as covenants of any of the foregoing reservations and restrictions recited herein as covenants or the application of the same as covenants in any particular instance is held invalid, the particular reservations or restrictions in question shall be construed instead merely as conditions upon the breach of which the Government may exercise its option to cause the title, right of possession and all other rights transferred to the Grantee, or any portion thereof, to revert to it, and the application of such reservations or restrictions as covenants in any other instance and the construction of the remainder of such reservations and restrictions as covenants shall not be affected thereby.

TO HAVE AND TO HOLD the said premises, with appurtenances, except rights excepted and reserved above, and under and subject to the aforesaid

-7-

Case: 26-10132   Doc# 25   Filed: 03/23/26   Entered: 03/23/26 15:26:18   Page 12 of 27

reservations or restrictions and conditions, unto the said Grantee, its successors and assigns forever.

IN WITNESS WHEREOF, the Grantor has caused these presents to be executed as of the day and year first above written.

UNITED STATES OF AMERICA
Acting by and Through
War Assets Administration

By _Donn A. Biggs_
DONN A. BIGGS
Associate Deputy Zone Administrator
Office of Real Property Disposal
Zone VI
San Francisco, California

STATE OF CALIFORNIA      :
                             : ss.
CITY AND COUNTY OF SAN FRANCISCO :

On this _4th_ day of _December_ 1947, before me, _____, a Notary Public in and for the City and County of San Francisco, State of California, personally appeared DONN A. BIGGS, known to me to be the Associate Deputy Zone Administrator, Office of Real Property Disposal, Zone VI, San Francisco, California, and known to me to be the person who executed the within instrument on behalf of said War Assets Administration, which executed said instrument on behalf of the United States of America, and acknowledged to me that he subscribed to the said instrument the name of the United States of America and the name of the War Assets Administration on behalf of the United States of America, and further that the United States of America executed said instrument.

WITNESS my hand and Official Seal.

(SEAL)

_____
Notary Public
in and for the City and County of
San Francisco, State of California

My Commission expires: 12/4/50

-8-

Case: 26-10132   Doc# 25   Filed: 03/23/26   Entered: 03/23/26 15:26:18   Page 13 of 27

# CERTIFICATE

I, the undersigned __L. S. Wright__

__Secretary, Real Property Review Board__, War Assets Administration, in my

official capacity as such __Secretary__,

and duly authorized in the DELEGATION OF AUTHORITY INCIDENT TO THE CARE,

HANDLING AND CONVEYANCING dated June 6, 1947, to make the following certi-

fication, do hereby certify:

   1.  That __DONN A. BIGGS__ is the

Associate Deputy Zone Administrator, Office of Real Property

Disposal, Zone VI, San Francisco, California,

War Assets Administration, duly appointed, authorized and acting in such

capacity at the time of the execution of the attached instrument.

   2.  That the attached DELEGATION OF AUTHORITY INCIDENT TO THE

CARE, HANDLING AND CONVEYANCING is a true and correct copy of the original

of said DELEGATION OF AUTHORITY, dated June 6, 1947.

   Given under my hand this __1st__ day of __December__, 194 __7__.

 

_L. S. Wright_
__Secretary__
(Title)
__Real Property Review Board__
(Office)
War Assets Administration

Case: 26-10132   Doc# 25   Filed: 03/23/26   Entered: 03/23/26 15:26:18   Page 14 of 27

(NOTICE)

DELEGATION OF AUTHORITY NO.

DELEGATION OF AUTHORITY INCIDENT TO THE CARE, HANDLING, AND CONVEYANCING OF
SURPLUS REAL PROPERTY AND PERSONAL PROPERTY ASSIGNED FOR DISPOSAL THEREWITH

The Deputy Administrator, Office of Real Property Disposal, and each Associate Deputy Administrator, Office of Real Property Disposal, War Assets Administration; the Zone Administrator, the Deputy Zone Administrator for Real Property Disposal, the Associate Deputy Zone Administrator for Real Property Disposal, and the Assistant Deputy Zone Administrator for Real Property Disposal, in each and every War Assets Administration Zone Office; the Regional Director and the Deputy Regional Director for Real Property Disposal, in each and every War Assets Administration Regional Office; the District Director and the Deputy District Director for Real Property Disposal, War Assets Administration District Office, Columbia, South Carolina; and any person or persons designated to act, and acting, in any of the foregoing capacities, are hereby authorized, individually (1) to execute, acknowledge and deliver any deed, lease, permit, contract, receipt, bill of sale, or other instruments in writing in connection with the care, handling and disposal of surplus real property, or personal property assigned for disposition with real property, located within the United States, its territories and possessions, (2) to accept any notes, bonds, mortgages, deeds of trust or other security instruments taken as consideration in whole or in part for the disposition of such surplus real or personal property, and to do all acts necessary or proper to release and discharge any such instrument or any lien created by such instrument or otherwise created, and (3) to do or perform any other act necessary to effect the transfer of title to any such surplus real or personal property located as above provided; all pursuant to the provisions of the Surplus Property Act of 1944, 58 Stat. 765, as amended (50 U.S.C. App. Supp. 1611); Public Law 181, 79th Congress, 59 Stat. 533; Executive Order 9689 (11 F.R. 1265); War Assets Administration Regulation No. 1 (12 F.R. 2249); and Surplus Property Administration General Amendment of January 5, 1946 (11 F.R. 408).

The Zone Administrator in each and every War Assets Administration Zone Office is hereby authorized to redelegate to such person or persons as he may designate the authority delegated to him by this instrument.

L. S. Wright, the Secretary of the Real Property Review Board, A. W. Manley, Associate Deputy Administrator, Office of Real Property Disposal, and J. T. Daly, Associate Deputy Administrator, Office of Real Property Disposal, War Assets Administration, are hereby authorized, individually, to certify true copies of this Delegation and provide such further certification as may be necessary to effectuate the intent of this Delegation in form for recording in any jurisdiction, as may be required.

This Delegation shall be effective as of the opening of business on June 9, 1947.

This authority is in addition to, but shall not in any manner supersede delegations of authority previously granted under dates of May 17, 1946; May 29, 1946; July 30, 1946; September 16, 1946; October 31, 1946; November 22, 1946; and January 13, 1947; as do not conflict with the provisions of this Delegation.

ROBERT M. LITTLEJOHN
Administrator

6549 RECORDED AT REQUEST OF
City of Eureka
vol. 101 page 76

Jun 18 10 45 A '47

Emma A. Cox

47-4066

RESOLUTION NO. 2289

A RESOLUTION ACCEPTING QUITCLAIM DEED EXECUTED BY
THE UNITED STATES OF AMERICA ACTING THROUGH THE WAR
ASSETS ADMINISTRATION FOR CERTAIN REAL PROPERTY.

WHEREAS, the United States of America, acting through the
War Assets Administration, has deeded to the City of Eureka properties
described as follows, to-wit:

BEGINNING at the southwest corner of Lot 4 in Section 32,
Township 5, North of Range 1, West, Humboldt Base & Meridian,
according to the United States Government Survey thereof;
thence running North on the section line common to Sections
31 and 32 in said Township to the section corner common to
Sections 29, 30, 31, and 32 of said Township; thence continuing
North on the section line common to Section 29 and Section 30
of said Township 5, to the low water mark of the Pacific Ocean;
thence Northeasterly on the said low water mark of said Pacific
Ocean to the point of intersection of a prolongation of the
North boundary line of Lot 2 in said Section 29; thence East
along the north boundary line of said Lot 2, to the point of
intersection of said boundary line with the north and south
half section line common to southwest quarter (SW¼) and the
southeast quarter (SE¼) said Section 29, which point is the
northeast corner of said Lot 2 in said Section 29; thence
running south on said north and south boundary line to the
Northwest corner of Lot 5 in said Section 29; thence running
south 55° east to the low water line of Humboldt Bay; thence
southwesterly along said low water mark of Humboldt Bay; thence
southwesterly along the low water mark of Humboldt Bay to the
point of intersection of a prolongation of the southerly
boundary line of Lot 4 in Section 32 in said Township 1,
aforesaid; thence westerly along the quarter section boundary
line common to Lots 4 and 5 in Section 32, aforesaid, to the
point of beginning.

SAVING AND EXCEPTING from the above conveyance the
following described pieces and parcels of land, to wit:

PARCEL ONE:

That parcel of land 50 feet wide granted to the United
States of America by deed dated the 2nd day of September 1931,
and recorded in Book 203 of Deeds at page 363, of the official
Records in the Office of the County Recorder of Humboldt
County, California.

PARCEL TWO:

A parcel of land 40 feet wide along the south boundary
line of Lot 4 in Section 32 aforesaid, as follows:

Beginning at the southwest corner of Lot 4 in Section 32,
aforesaid; thence running North along the west boundary line
of said Lot 4, a distance of 40 feet; thence running easterly
on a line parallel to the south boundary line of said Lot 4
to the point of intersection of the northerly line of that
50 foot right-of-way across the southeasterly portion of said
Lot 4, described in the deed granted to the United States of
America dated the 2nd day of September 1931, and recorded
in Book 203 of Deeds at page 363, of the official Records
in the office of the County Recorder of Humboldt County,
California; thence southerly 33° 14' 47" along the north-
westerly line of said 50 foot right-of-way to the southerly

1.

line of Lot 4 of said Section 32; thence West on the southerly line of said Lot 4 in said Section 32, to the point of beginning.

PARCEL THREE:

Beginning at a point 500 feet south, 33° 14' 47" West from the north boundary line of said Section 32, on the easterly line of that 50 foot piece of land described in the deed dated the 2nd day of September 1931, and recorded in Book 203 of Deeds at page 363 of the Official Records in the Office of the County Recorder of Humboldt County, California; thence continuing south 33° 14' 47" west along the easterly line of said 50 foot right-of-way a distance of 700 feet; thence south 30° east, a distance of 940 feet more or less to the low water mark of the west side of Humboldt Bay; thence northeasterly along the low water mark on the West side of Humboldt Bay to a point 300 feet southwesterly from the section line common to Section 29 and Section 32, aforesaid, as measured along the said low water mark of Humboldt Bay; thence southwesterly 1340 feet, more or less, to the point of beginning.

Said land conveyed hereby, being a part of the land acquired by condemnation proceedings had in the District Court of the United States in and for the Northern District of California, Northern Division, Case No. 4513, wherein United States of America was plaintiff, and 478.24 acres of land in Eureka, Humboldt County, California, Sadie N. Deakyne, et al., were defendants, and in which proceedings final judgment was entered therein on the 14th day of April 1944.

THE ABOVE DESCRIBED LAND, hereby transferred is conveyed

together with appurtenant buildings, structures, and improvements,

as follows:

BUILDINGS AND IMPROVEMENTS

Administration Building No. 1.
Storage Building No. 7.
Pump House No. 6.
Fire Equipment Shelter.

IMPROVEMENTS

Bituminous Landing Area, 2 mooring circles
Field Marking System
Drainage System
Fueling System
Electrical System
Water System
Sewage System

OPERATING EQUIPMENT

All operating equipment used in the buildings above described.

WHEREAS, the said properties constitute the former Naval

Auxiliary Air Facilities and Sea Plane Base, and is desired by the

City of Eureka as a municipal airport; and

WHEREAS, the acceptance of said properties will be very

beneficial and advantageous to the City of Eureka.

2.

Case: 26-10132   Doc# 25   Filed: 03/23/26   Entered: 03/23/26 15:26:18   Page 17 of 27

NOW, THEREFORE, BE IT RESOLVED that the quitclaim deed dated December 9, 1947, by the United States of America, acting by and through the War Assets Administration be and is hereby accepted by the City of Eureka and the Recorder is hereby authorized to duly record the same in accordance with law.

I hereby certify that the foregoing Resolution was duly and regularly introduced, passed and adopted at a meeting of the Council of the City of Eureka held on the _18th_ day of _May_, 1948, by the following Vote:

AYES: COUNCILMEN _Johnson, Madsen, Slack, Burton & Morrow_

NOES: COUNCILMEN _None_

ABSENT: COUNCILMEN _None_

ATTEST:

_[signature]_

CITY CLERK OF THE CITY OF EUREKA

3.

Case: 26-10132   Doc# 25   Filed: 03/23/26   Entered: 03/23/26 15:26:18   Page 18 of 27

# Exhibit B

City of Eureka
Accounts Receivable
Zephyr Hospitality LLC

| | Date | 3/20/2026 |
|---|---|---|
| Account Balance | $ | 45,635 |

| Date | Reference | Description | Base Rent | Rent Balance | Interest | Interest Balance | Late Charges (LC) | LC Balance | Account Balance |
|---|---|---|---|---|---|---|---|---|---|
| 12/2/2024 | INV06921 | Lease - 900 New Navy Base Rd | $ 2,629 | $ 2,629 | $ 22 | $ 22 | $ 39 | $ 39 | $ 2,690 |
| 1/2/2025 | INV06989 | Lease - 900 New Navy Base Rd | 2,629 | 5,258 | 44 | 66 | 39 | 79 | 5,403 |
| 2/3/2025 | INV07176 | Lease - 900 New Navy Base Rd | 2,629 | 7,887 | 66 | 131 | 39 | 118 | 8,137 |
| 3/3/2025 | INV07305 | Lease - 900 New Navy Base Rd | 2,629 | 10,516 | 88 | 219 | 39 | 158 | 10,893 |
| 4/1/2025 | INV07437 | Lease - 900 New Navy Base Rd | 2,629 | 13,145 | 110 | 329 | 39 | 197 | 13,671 |
| 5/1/2025 | INV07569 | Lease - 900 New Navy Base Rd | 2,629 | 15,774 | 131 | 460 | 39 | 237 | 16,471 |
| 6/2/2025 | INV07733 | Lease - 900 New Navy Base Rd | 2,629 | 18,403 | 153 | 613 | 39 | 276 | 19,293 |
| 7/1/2025 | INV07874 | Lease - 900 New Navy Base Rd | 2,629 | 21,032 | 175 | 789 | 39 | 316 | 22,136 |
| 8/1/2025 | INV08005 | Lease - 900 New Navy Base Rd | 2,629 | 23,661 | 197 | 986 | 39 | 355 | 25,002 |
| 9/2/2025 | INV08150 | Lease - 900 New Navy Base Rd | 2,629 | 26,290 | 219 | 1,205 | 39 | 394 | 27,889 |
| 10/6/2025 | INV08293 | Lease - 900 New Navy Base Rd | 2,629 | 28,919 | 241 | 1,446 | 39 | 434 | 30,799 |
| 11/3/2025 | INV08462 | Lease - 900 New Navy Base Rd | 2,629 | 31,548 | 263 | 1,709 | 39 | 473 | 33,730 |
| 12/1/2025 | INV08576 | Lease - 900 New Navy Base Rd | 2,629 | 34,177 | 285 | 1,994 | 39 | 513 | 36,683 |
| 1/2/2026 | INV08686 | Lease - 900 New Navy Base Rd | 2,629 | 36,806 | 307 | 2,300 | 39 | 552 | 39,659 |
| 2/2/2026 | INV08804 | Lease - 900 New Navy Base Rd | 2,629 | 39,435 | 329 | 2,629 | 39 | 592 | 42,656 |
| 3/2/2026 | INV08912 | Lease - 900 New Navy Base Rd | 2,629 | 42,064 | 351 | 2,980 | | 592 | 45,635 |
| | | Subtotal | $ 42,064 | | $ 2,980 | | $ 592 | | |

Notes:
1. Interest is charges at 10% per annum (.83% per month) on Balance Owed from prior month.
2. Late charges are 1.5% of Base Rent per month.

**City of Eureka**
**Accounts Receivable**
**Zephyr Hospitality LLC**

**Date**        3/20/2026

**Estimated Gross Sales**

| Quarter Ending | | Gross Sales | | 3% to City of Eureka |
|---|---|---|---|---|
| 12/31/2024 | $ | 71,429 | $ | 2,143 |
| 3/31/2025 | | 71,429 | | 2,143 |
| 6/30/2025 | | 105,784 | | 3,174 |
| 9/30/2025 | | 137,964 | | 4,139 |
| 12/31/2025 | | 71,429 | | 2,143 |
| 3/31/2025 | | 47,619 | | 1,429 |
| | | Total to City $ | | 15,170 |

*The gross sales for the quarter ending 3/31/2026 are estimated on a pro rata basis for the months of January and February.*

# Exhibit C



**humboldtbaysocialclub**

Global Genius • Holding Hands

**humboldtbaysocialclub**  Local Winter Hideaway

Hey Humboldt locals ♡
==January, February, and March rooms are just $100 a night*==

Come get warm.
Come get steamy.
Come sip something delicious.

Sauna heat on your skin, a long soak under the winter sky, a cozy room to land in, and a cocktail (or two) waiting on the other side. No packing lists, no long drives, no expectations. Just a sweet little escape right here at home.

DM us or book online before the locals-only rooms disappear.

No membership required.
Just good vibes.

*Before taxes and fees. Excludes holidays and weekends.

 @csegphoto

#locallove #humboldtbaysocialclub #socialspas #northcoast #samoapeninsula

Edited · 9w

**csegphoto** Can't wait to come back!! ♡
9w  1 like  Reply

**oldeworldlegendseeds_** SURROUNDED BY TWEAKERS....NO THANKS ♡
8w  Reply

♡  ○  ◁                                                                    ⬚

 Liked by **humboldtmade** and 86 others
==January 7==

☺  Add a comment...                                                   Post

Case: 26-10132    Doc# 25    Filed: 03/23/26    Entered: 03/23/26 15:26:18    Page 23 of 27

# Exhibit D



social.spas and 2 others ···

social.spas At Social Spas, we trust that healing work is intuitive, cyclical, and always evolving.

We're in the process of moving again. Our time at 760 11th St in Arcata was part of the journey and offered valuable perspective. As we listen more closely to what feels most aligned, we're being called back to a deeper focus on plant medicine, intentional bodywork, and spaces that truly support grounded, embodied healing. We sincerely wish Center For New Growth the very best moving forward.

For now, we're continuing to care for our community at Humboldt Bay Social Club and Scotia Lodge.

A little extra medicine while you're with us
All massages at Humboldt Bay Social Club include a complimentary 30 minute cedar sauna session. An invitation to slow down, soften, and let the work fully integrate.

We'll keep you updated as our next location comes into focus. Thank you for trusting the process, moving with us, and continuing to choose care, presence, and plant medicine. 🌿

#socialspa #plantmedicine #roots #massagetherapy #bodywork
7w

steph1383 Ahhh no wonder I couldn't book online last night. I'll change locations and try again.
7w   3 likes   Reply

⎯⎯ View replies (1)

wellness__communityy 🍄 This shot is really so lovely if you want we can share the post send me pic

♡ ⃝ ✦                                            🔖

13 likes
January 20

☺ Add a comment…                                Post

# Exhibit E

# SUSHI WITH CHEF PANGNOU VANG
## AT THE
# HUMBOLDT BAY SOCIAL CLUB
### FRIDAYS 4PM TO 9PM

**Citrus Dragon Roll**
Inside: Avocado and Tobiko
Topped with Salmon, thinly sliced Lemon and Green Onions
Nori-free Roll
$22

**Fishing For Compliments Roll**
Inside: Avocado, and Tempura Shrimp
Topped with Hamachi, Yuzu Seasoning, and Green Onions
$22

**Humboldt Cali Roll**
Inside: Avocado and Cucumber with a Dungeness Crab and Shrimp Salad
Topped with Green Onions, Crispy Shallots and Toasted Black Sesame Seeds
$22

**Shiro Maiden Roll**
Inside: Tempura Yam, Avocado, and Cucumber
Topped with Torched Escolar, Curried Aioli and Garlic Chips
$20

**Spicy Bubba Unagi Roll**
Inside: Cucumber and Tempura Shrimp
Topped with Unagi, Avocado, Jalapeño, Spicy Aioli and Chili Oil
$20

**Bang Bang Salmon Roll**
Inside: Cucumber, Avocado, and Ebi
Topped with Salmon and Bang Bang Sauce
Lightly Torched
Finished with Green Onions and Tobiko
$20

**Ruby Red Dragon Roll**
Inside: Tempura Shrimp, Avocado, and Cucumber
Topped with Spicy Tuna, Green Onions and Spicy Aioli
$20

**Hot Not Tuna Roll** [VEGAN]
Inside: Tempura Asparagus, Cucumber, Avocado
Topped with Spicy Not Tuna Mix, Green Onions and a Spicy Vegan Aioli
$18

**Palm Springs Cali Roll** [VEGAN]
Inside: Avocado and Cucumber with a Hearts of Palm Faux Crab Mix
Topped with Green Onions, Crispy Shallots and Toasted Black Sesame Seeds
$18

**Bomb~Mi Tofu Roll** [VEGAN]
Inside: Avocado, Cucumber, Cilantro, House Pickled Carrots, Daikon and Jalapeño
Topped with Fried Marinated Tofu and a Vegan Spicy Aioli
$18

## Nigiri~Pairs

**Ahi ~ $8**
Shaved Cured Egg Yolk

**Hamachi ~ $10**
Yuzu Sprinkle and Green Onions

**Salmon ~ $8**
Lemon

**Ebi ~ $8**
Yuzu Kosho

**Last Bite Unagi ~ $10**
Eel Sauce & Torched

**Escolar ~ $10**
Garlic Chips

**Taylor's Tofu Nigiri ~$8**
Marinated Fried Tofu Vegan Aioli

**Vegan Nigiri ~$8**
Special of the day

### Mini Maki Rolls
Lemon Salmon $12
Hamachi and Green Onion $12
Willie's Chicken Katsu $10
Tekka-Ahi Spicy or Not $10
Avocado $8
Cucumber $7
Ghost $6

### Hand Rolls
Spicy Tuna, Avocado, and Cucumber $12
Salmon, Avocado, and Cucumber, Yuzu Miso Aioli $14

**Tempura Shrimp Roll**
Inside: Tempura Shrimp, Avocado and Cucumber
Topped with Tempura Crunchies, Spicy Aioli and Eel Sauce
$16

**Tempura Yam Roll** [VEGAN]
Inside: Cucumber, Avocado, and Tempura Yam
Topped with Green Onions and Toasted Sesame Seeds
$14

**Miso Soup** [VEGAN]
Tofu, Green Onion and Wakame~$6

**Sunomono~Cucumber Salad~$7** [VEGAN]

**Super Sunomono**
Cucumber Salad, Avocado, House Pickled Jalapeño, Rye Garlic, Green Onions, Toasted Sesame eds and Tobiko
Topped with Ebi and Lemon Salmon
$14

**Bomb~Mi Sliders~2 per order**
Fried Tofu $12
Slow Braised Pork Belly $13
Tempura Salmon $14
Avocado, Cucumber, Cilantro, House Pickled Carrots, Daikon and Jalapeño
On a Soft Slider Bun with Spicy Aioli

**Wagyu Beef Nigiri**
Nigiri Pair of Wagyu, Torched, Topped with Soy Tare & Shaved Bone Marrow Butter
$13

SOME SUSHI ITEMS CONTAIN RAW FISH. EATING RAW OR UNDERCOOKED FOODS MAY INCREASE THE RISK OF ILLNESS.
LET US KNOW IF YOU HAVE ANY ALLERGIES—YOUR SAFETY MATTERS TO US!



---

**humboldtbaysocialclub**
Humboldt Bay Social Club  ...

**humboldtbaysocialclub** Everyone's asking about the sushi... so let's talk about it 🍣

Yes you can go get sushi anywhere. Humboldt's got rolls on rolls.

But this isn't your everyday, set it and forget it sushi menu...

This is pop up sushi. Chef driven. Fresh fish forward. Built for the night.

Real hamachi
Fresh salmon
Spicy tuna
Dungeness crab builds
Citrus, yuzu, chili oil, microgreens... all the fun stuff

Clean. Bright. Fresh.

The kind of sushi you pair with a cocktail... not a takeout box.

And you're eating it on the peninsula...posted up at the Social Club, music on, watching the night roll in next to a cozy fire and amazing folks.

Humboldt Bay Social Club
No membership required. Just good vibes 🌊🍣

#hbsc #freshsushi #fridayvibes #northcoast #simpley_perfection
1w

**oldtown_coffee** Yahoo!
1w   1 like   Reply

springhillfarmsteadgoatcheese I had the tempura yam and

♡  ◯  ▽                                          🔖

Liked by **oldtown_coffee** and 77 others
February 27

☺  Add a comment...                              Post